[No. 7903-4–I.   Division One.   December 22, 1980.]

RONALD SEWER DISTRICT, *Appellant,* v. KARL J. BRILL, ET AL, *Defendants,* JOHN P. MILLS, ET AL, *Respondents.*

*Theodore M. Rosenblume & Associates* and *Charles B. Allen,* for appellant.

*Quigley, Hatch, Loveridge & Leslie* and *Paul V. Rieke,* for respondents.

DURHAM, J.—Ronald Sewer District (District) appeals from a summary judgment in favor of respondents Mills, dismissing its suit to foreclose a lien against Mills' property for nonpayment of sewer service charges. The District is a municipal corporation located in King County, Washington, organized pursuant to RCW 56.04, whose purpose is "acquirement, construction, [and] maintenance . . . of a system of sewers . . ." RCW 56.04.020. It forms Utility Local Improvement District No. 11, which includes the property at 19532 14th Avenue N.E., Seattle, Washington, owned by Mills.

Sewer lines were constructed beneath 14th and 15th Avenues N.E. Mills' property abuts on 14th Avenue, and is separated from 15th Avenue by a neighbor's property. There has been no connection of Mills' property to either of

these lines. The only structure there is a garage with no water, sewer, or electricity.

The relevant statutes, RCW 56.16.090 and .100,[1] provide the District with the power to set rates and enforce collection thereof for those to whom service is "available." Pursuant to these statutes, the District imposed sewer charges which Mills refused to pay. The District filed a lien against the property, and this litigation resulted.

The question before us is if the District is authorized to assess sewer charges against property owners whose property could be, but is not, connected to the District's sewer line.

It is important to note that in 1959, the critical phrase in RCW 56.16.090 "to those receiving such service" was changed to read "to whom such service is available." RCW 56.16.100 was similarly changed in 1977 from "property owners receiving the service" to "owners to whom the service is available."

■■ When a statute is amended and a material change is made in the wording, there is a presumption that the legislature intended to change the law. *Childers v. Childers,* 89 Wn.2d 592, 575 P.2d 201 (1978). We presume that by this amendment the legislature intended to expand the class upon whom sewer service fees could be imposed to include property, such as Mills', which could be, but has not been, connected to district sewer lines. It is clear that the legislature may do so as an exercise of its power to protect health and welfare. *Morse v. Wise,* 37 Wn.2d 806, 226

---

[1]RCW 56.16.090 provides in part:

"The sewer commissioners of any sewer district, in the event that such sewer revenue bonds are issued, shall provide for revenues by fixing rates and charges for the furnishing of sewerage disposal service to those to whom such service is available."

RCW 56.16.100 provides in part:

"The commissioners shall enforce collection of the sewer connection charges and sewerage disposal service charges against property to which and its owners to whom the service is available, such charges being deemed charges against the property to which the service is available, . . ."

P.2d 214 (1951); *Glendale v. Trondsen,* 48 Cal. 2d 93, 308 P.2d 1 (1957).

A few cases have construed the meaning of the word "available" in circumstances similar to these. In *State ex rel. N.C. Utils. Comm'n v. Transylvania Util. Co.,* 30 N.C. App. 336, 337, 226 S.E.2d 824, 825 (1976), the court discussed the meaning of the term:

> The concept of "availability" charges of water and sewer companies is of relatively recent origin. It appears to have arisen in instances where tracts of land were developed for recreational homes. Most all of the lots would be sold in a relatively short time, but few of the purchasers would immediately build on their lots. The practice has been for the developer and the purchasers of the lots, by uniform contract, to agree that *the property owner would pay a fixed monthly sum prior to the time that the owner desired a tap connecting the waterwork system to his lot.* Thereafter, the property owner became a customer of the utility and was required to pay the lawfully established rates charged by the utility.

(Italics ours.)

A number of other cases have discussed the powers of various agencies to enforce, either directly by rate making, or indirectly by contract, such availability fees. In all of them, the concept of "availability" is used to refer to charges paid for sewer or water service fees regardless of whether the landowner had actually connected to the municipal line. *See State ex rel. Utils. Comm'n v. Carolina Forest Utils., Inc.,* 21 N.C. App. 146, 203 S.E.2d 410 (1974).

The trial court, in granting summary judgment for Mills, relied on *Lake Stevens Sewer Dist. v. Village Homes, Inc.,* 18 Wn. App. 165, 566 P.2d 1256 (1977). There, a sewer district sought to collect charges from the owner of buildings that were connected to the sewer line, but were unoccupied. The court held that the sewer line became "available" within the meaning of RCW 56.16.090 when it was physically connected to the individual property's sewer. However, at the time *Lake Stevens* was decided, the change in

the statute authorizing enforcement against property owners, RCW 56.16.100, had not yet been revised and expanded as discussed earlier. We believe the trial court's reliance upon *Lake Stevens* was misplaced because of the statutory changes.

■ Mills further contends that the property is not subject to assessment because it does not contain a structure that is "habitable" or "available for human occupancy" within the meaning of District resolution No. 76–42, § 1. Both parties conceded at oral argument that the trial court did not consider this issue when it granted summary judgment. We will not, therefore, consider it. *Bernal v. American Honda Motor Co.*, 87 Wn.2d 406, 553 P.2d 107 (1976). For the same reason, we do not reach the issue of the trial court's denial of Mills' motion to amend his answer.

We reverse the order of summary judgment and remand the case for further proceedings consistent with this opinion.

JAMES, A.C.J., and RINGOLD, J., concur.