[No. 86859-0. En Banc.]
Argued September 13, 2012. Decided December 6, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. NICHOLAS ANTHONY PAPPAS, *Petitioner*.

190

*Thomas M. Kummerow* (of *Washington Appellate Project*), for petitioner.

*Mark K. Roe, Prosecuting Attorney*, and *Seth A. Fine, Deputy*, for respondent.

¶1 MADSEN, C.J. — Nicholas Pappas challenges the Court of Appeals' decision affirming an exceptional sentence for vehicular assault based on the severity of the victim's injuries. We hold that our case law and the language of RCW 9.94A.535(3)(y) authorize an exceptional sentence when the jury finds the victim's injuries substantially exceed "substantial bodily harm." Accordingly, we affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

¶2 On August 12, 2008, Pappas gave Melanie Thielman a ride on his motorcycle. While driving, Pappas passed another car and that driver observed Pappas to be driving at a high rate of speed. Pappas drove off the road when it curved, and he hit a utility pole. Thielman and Pappas were thrown from the motorcycle. Thielman suffered several injuries, including bruising, fractures, and a severe and likely permanent brain injury. As a result, she is unable to walk or speak, unable to feed herself without assistance, and has trouble with bodily functions. She will likely require care for the rest of her life, which may be shortened due to the risk of infection.

¶3 The State charged Pappas with vehicular assault under the reckless manner and disregard for the safety of

others prongs, both requiring proof of "substantial bodily harm." The State also charged the aggravating circumstance that the "victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." RCW 9.94A.535(3)(y); Clerk's Papers at 121. The jury instructions included a definition of "substantial bodily harm" and an instruction that Thielman's injuries must "substantially exceed" this level of harm to find the aggravating factor. The jury convicted Pappas of vehicular assault for disregard for the safety of others, rejecting the reckless manner prong. The jury also found that Thielman's injuries substantially exceeded the level of harm required for vehicular assault. In response to the jury's findings, the trial judge departed from the standard sentence range of 1 to 3 months and imposed an exceptional sentence of 18 months.

¶4 Pappas appealed the trial court's imposition of an exceptional sentence, arguing that the sentence was invalid because the factor of injury severity "inheres in the verdict for vehicular assault." Br. of Appellant at 3 (capitalization omitted). Relying on case law interpreting an older version of the vehicular assault statute, Pappas argued that the legislature necessarily contemplated this level of injury when it set the standard range for the offense. The Court of Appeals rejected this argument and affirmed the sentence, relying on the language of RCW 9.94A.535(3)(y) and this court's recent ruling in *State v. Stubbs*, 170 Wn.2d 117, 240 P.3d 143 (2010).

## ANALYSIS

¶5 Pappas argues that an exceptional sentence cannot be imposed for a vehicular assault conviction under RCW 9.94A.535(3)(y), as a matter of law. To reverse an exceptional sentence, we must find either that "the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do

not justify a sentence outside the standard sentence range for that offense" or that "the sentence imposed was clearly excessive or clearly too lenient." RCW 9.94A.585(4); *Stubbs*, 170 Wn.2d at 123. The legal sufficiency of a sentence is reviewed de novo. *State v. Ferguson*, 142 Wn.2d 631, 646, 15 P.3d 1271 (2001).

█ ¶6 A trial court can impose an exceptional sentence under RCW 9.94A.535(3)(y) when the jury finds that the " 'victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense' " and the court is satisfied that this is a " 'substantial and compelling reason' " to justify an exceptional sentence. *Stubbs*, 170 Wn.2d at 124 (quoting RCW 9.94A.535). The "substantially exceed" aggravating factor was codified when the legislature amended RCW 9.94A.535 to conform with *Blakely v. Washington*, 542 U.S. 296, 305, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In doing so, the legislature recognized "the need to restore the judicial discretion that has been limited as a result of the *Blakely* decision." LAWS OF 2005, ch. 68, § 1 (codified as RCW 9.94A.535).

█ ¶7 We noted in *Stubbs* that RCW 9.94A.535(3)(y) "create[d] a somewhat different test than we have employed in the past" when considering a victim's injuries for purposes of an exceptional sentence. 170 Wn.2d at 128. Previously, we considered whether the victim's injuries fit within the definition of the statute's required element of harm; however, RCW 9.94A.535(3)(y) now requires comparison of the victim's injuries against the minimum injury necessary to satisfy the offense. *Id.* at 128-29. As an example of "substantially exceed," we said that "[s]uch a leap is best understood as the jump from 'bodily harm' to 'substantial bodily harm,' or from 'substantial bodily harm' to 'great bodily harm.' " *Id.* at 130. While the jump between statutory categories of harm necessarily meets the "substantially exceed" test, injuries can "substantially exceed" one category of harm without reaching the severity of the next category. This is supported by the language of RCW

9.94A.535(3)(y), which requires only that the injuries "substantially exceed," rather than a requirement to meet, a higher category of harm.

¶8 Here, Thielman's injury substantially exceeds the minimum element of harm necessary for vehicular assault, "substantial bodily harm," under RCW 9.94A.535(3)(y). "Substantial bodily harm" is defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b). Thielman's permanent and severe brain injury is substantially more severe than the minimum temporary injuries required for "substantial bodily harm." By the plain language of the factor, her injury "substantially exceeds" and meets the requirements of the RCW 9.94A.535(3)(y). Additionally, the injury is also sufficiently severe as to jump to the next category of harm, "great bodily harm."[1] *Stubbs*, 170 Wn.2d at 130. In either case, an exceptional sentence is authorized under RCW 9.94A.535(3)(y).

¶9 Pappas contends, however, that the "substantially exceeds" aggravator cannot apply because prior case law does not allow an exceptional sentence based on the severity of injury in a vehicular assault charge. In support of this argument, he relies on two cases decided under a prior version of the vehicular assault statute, *State v. Nordby*, 106 Wn.2d 514, 519, 723 P.2d 1117 (1986), and *State v. Cardenas*, 129 Wn.2d 1, 6, 914 P.2d 57 (1996).

¶10 Both *Nordby* and *Cardenas* were decided under the pre-2001 version of the vehicular assault statute that required a higher level of harm, i.e., that the defendant proximately caused "serious bodily injury" while acting in a reckless manner or under the influence of alcohol or drugs.

---

[1] "Great bodily harm" is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c).

Former RCW 46.61.522 (1996). "Serious bodily injury" was defined within the statute as "bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body."[2] Former RCW 46.61.522(2). In 2001, the vehicular assault statute was amended to eliminate the proximate cause requirement, to include an additional means of committing vehicular assault by showing "disregard for the safety of others," and to lower the harm requirement from "serious bodily injury" to "substantial bodily harm." RCW 46.61.522 (amended 2001).

¶11 In *Nordby*, this court concluded that the severity of the victim's injuries was a factor "already considered in setting the presumptive sentence range for vehicular assault," relying on the former version of the vehicular assault statute. *Nordby,* 106 Wn.2d at 519. There, the victim's injuries, including broken legs and an arm requiring surgery, extreme pain, and the possibility of permanent injury, fell within the definition of "serious bodily injury." *Id.* Although the injuries were severe, they were the type of injuries contemplated within the statute.

¶12 Similarly, *Cardenas* was decided under the higher "serious bodily injury" standard. *Cardenas,* 129 Wn.2d at 6. As in *Nordby*, the victim's injuries were severe, including fractures, a potentially permanent loss of memory and cognitive functions, and a likelihood of being unable to walk without a cane or walker. However, these injuries fell within the definition of "serious bodily injury." *Id.* In *Cardenas*, we said that "[a]lthough particularly severe injuries may be used to justify an exceptional sentence, the injury must be greater than that contemplated by the Legislature in setting the standard range." *Id.* We also distinguished the case from *State v. George*, 67 Wn. App. 217, 834 P.2d 664 (1992), *overruled on other grounds by State v. Ritchie*, 126 Wn.2d

---

[2] When the vehicular assault statute was first adopted, the legislature had not defined the three levels of bodily harm currently in use; however, "serious bodily injury" would most likely mirror "great bodily harm" under the current code.

388, 894 P.2d 1308 (1995). *Cardenas*, 129 Wn.2d at 7. The court in *George* departed from our holding in *Nordby* because *George* showed deliberate and gratuitous violence in causing the injuries. *George*, 67 Wn. App. at 223. We disapproved of the ruling to the extent that it suggested an exceptional sentence could be imposed merely because of injury severity where it was an element of the crime. *Cardenas*, 129 Wn.2d at 7.

¶13 Pappas relies primarily on these past holdings and argues that *any* element of harm in the statute necessarily shows that all levels of harm were contemplated by the legislature. As a result, Pappas contends that an exceptional sentence for vehicular assault can never be based on the severity of injuries. This argument misinterprets our holdings in *Cardenas* and *Nordby*. There, we rejected considerations of severity because the victims' injuries matched the element of harm defined in the statute, not because any level of harm at all was indicated. *See Stubbs*, 170 Wn.2d at 127-28. As discussed, those cases were decided under the former "serious bodily injury" standard and no level of injury short of death could have fallen outside the defined element of harm, as was the case in *Stubbs* when we considered whether injuries could exceed "great bodily harm." *Id.* at 128 (stating that "we cannot imagine an injury that exceeds 'great bodily harm' but leaves the victim alive" in the context of first degree assault). Had *Cardenas* and *Nordby* been decided under the current vehicular assault statute, we may have reached a different result because the victims' injuries were significantly greater than the present statute's lower level of harm, "substantial bodily harm."

¶14 *Cardenas* and *Nordby* do not preclude an exceptional sentence where the injuries are greater than those contemplated by the legislature in setting the standard range. This interpretation is also consistent with RCW 9.94A.535(3)(y) because the statute necessarily contemplates a comparison of the injuries sustained with the level

of harm the legislature determined was necessary to satisfy the elements of the offense. Following the analysis from these cases, an exceptional sentence was authorized here because Thielman's injury was more severe than the injury contemplated by the legislature under the current vehicular assault statute.

¶15 Pappas also argues that applying the "substantially exceed" aggravating factor to vehicular assault cases expands the existing statutory aggravating circumstances.[3] He is incorrect. While the method of determining whether the aggravating factor may be applied to vehicular assault has changed, because the level of harm defined in the offense is now lower, severity of harm has been recognized as an aggravating factor in the past, even in cases of vehicular assault. *See State v. Quiros*, 78 Wn. App. 134, 142, 896 P.2d 91, *review denied*, 127 Wn.2d 1024, 904 P.2d 1158 (1995).

¶16 Finally, Pappas argues that case law forbids an exceptional sentence where the aggravating circumstance is inherent in the offense, citing several cases for this conclusion. *State v. Dunaway*, 109 Wn.2d 207, 218-19, 743 P.2d 1237, 749 P.2d 160 (1987) (planning is inherent in premeditation of attempted first degree murder); *State v. Armstrong*, 106 Wn.2d 547, 550-51, 723 P.2d 1111 (1986) (burns inflicted on a baby were accounted for in the offense of second degree assault); *State v. Baker*, 40 Wn. App. 845, 700 P.2d 1198 (1985) (planning inherent in attempted first degree escape). Unlike the aggravating factor here, these cases all involve acts that were necessary to commit the offense, rather than acts causing injury exceeding that which is necessary to prove elements of the offense. Thus,

---

[3] The legislature stated that its intent was "to codify existing common law aggravating factors, without expanding or restricting existing statutory or common law aggravating circumstances," and that it did not "intend the codification of common law aggravating factors to expand or restrict currently available statutory or common law aggravating circumstances." Laws of 2005, ch. 68, § 1 (codified as RCW 9.94A.535).

while a temporary injury may be inherent in a finding of vehicular assault, a severe and permanent injury is not.

¶17 Pappas contends, though, that the rationale underlying these cases is that the legislature necessarily considered the potential for variances in conduct and that here, the legislature would have enacted additional degrees of vehicular assault to account for harms up until death if it intended a harsher penalty based on the severity of harm. This argument runs contrary to our decision in *State v. Fisher*, 108 Wn.2d 419, 423-24, 739 P.2d 683 (1987). There, we said an exceptional sentence was justified based on a victim's vulnerability due to extreme youth, despite age being an element of the statute. *Id.* at 424. We reasoned that while the legislature may have determined that victims under age 14 were more vulnerable than children 14 or older, it could not have considered specific vulnerabilities since victims range widely in age. *Id.* at 423-24. Similarly, the legislature may not have considered the particular injuries in each case of vehicular assault, recognizing that injuries may range from substantial, but temporary, to permanent and life threatening. Because a severe permanent injury is not inherent in a vehicular assault conviction, an exceptional sentence may be imposed where the injury is sufficiently severe.

## CONCLUSION

¶18 We conclude that the "substantially exceed" aggravating factor can justify an exceptional sentence for vehicular assault, based on RCW 9.94A.535(3)(y) and case law. We affirm the Court of Appeals.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., and SEINFELD, J. PRO TEM., concur.